UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA HERNANDEZ as heir and representative of the estate of ROBERTO HERNANDEZ,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>Defendant. | 1:13-cv-01373-GSA<br><br><br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**I.   INTRODUCTION**

Maria Hernandez, as heir and representative of the estate of Roberto Hernandez, seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying Mr. Hernandez's application for supplemental security income ("SSI") and disability insurance benefits pursuant to Titles II and XVI of the Social Security Act.[1] The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2]

---

[1] Plaintiff died on June 13, 2011 of causes unrelated to his alleged impairments. AR 32, 167. His widow and heir, Maria Hernandez, elected to continue the proceeding on his behalf. AR 33. For ease of reference, Mr. Hernandez will be referred to as the acting "Plaintiff" herein, although Maria Hernandez is the proper "plaintiff" as the heir and representative of his estate.

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. ECF Nos. 7, 8.

## II. BACKGROUND AND PRIOR PROCEEDINGS[3]

Plaintiff was 47 years old at the time of his death in 2011. AR 138. He was able to speak English and Spanish, but appears to have had limited proficiency in reading and writing English. AR 182, 205, 444. He was enrolled in school up until the 7th grade, when he was suspended and did not return to complete his studies. AR 188, 446. Plaintiff worked at various jobs between 2004 and 2009, including, among other things, as a laborer and as a mechanic. AR 184. Plaintiff lived with his wife and four children, three of whom were under the age of 18 at the time of his death. AR 139.

Plaintiff's alleged physical conditions included diabetes with neuropathy, hepatitis C, and a laceration of his left hand. AR 183. He also allegedly suffered from depression. AR 445. He took a number of medications to manage his symptoms, including codeine, gabapentin, Humalog (insulin), hydrocodone, Lantus (insulin), lisinopril, metformin, and Bactrim. AR 187.

On August 14, 2009, Plaintiff filed applications for disability insurance and SSI benefits under Titles II and XVI. AR 138-148. These applications were denied initially on October 26, 2009 and on reconsideration on October 28, 2010. AR 62-66, 70-74. Plaintiff filed a request for a hearing on November 29, 2010. AR 77-78. The hearing was then conducted before Administrative Law Judge John Heyer (the "ALJ") on March 26, 2012. AR 13. On April 16, 2012, the ALJ issued an unfavorable decision determining that Plaintiff was not disabled. AR 10-22. Plaintiff filed an appeal of this decision with the Appeals Council. The Appeals Council denied the appeal, rendering the order the final decision of the Commissioner. AR 3-5.

## III. THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

. . . his physical or mental impairment or impairments are of such severity that he

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)-(f) and 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments;[4] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work;[5] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. §§ 404.1520(a)-(f) and 416.920(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 10-22. In particular, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 5, 2009, the date specified in his application. AR 15. Further, the ALJ identified diabetes mellitus with neuropathy, hepatitis C, laceration of the left hand, and depression as medically determinable impairments. AR 15. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments

---

[4] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c).

[5] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545 and 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

did not meet or exceed any of the listed impairments. AR 15.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that he could perform only simple grasping motions with his non-dominant left hand and was able to perform simple repetitive tasks. AR 17. Although Plaintiff could not perform his past relevant work, he could perform other work that exists in national economy. AR 20.

### IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

### V. DISCUSSION

**A. The ALJ's Evaluation of Plaintiff's Credibility was Appropriate**

Plaintiff challenges the ALJ's rejection of Plaintiff's statements about the "intensity, persistence and limiting effects" of his symptoms. AR 18; Plaintiff's Opening Brief ("Opening Brief") 8:3-21, ECF No. 14. Specifically, Plaintiff argues that: (1) the ALJ did not articulate any specific reasons for rejecting Plaintiff's statements; and (2) the ALJ did not identify which of Plaintiff's statements he found not credible. Opening Brief 8-9.

The Commissioner disputes Plaintiff's characterization of the ALJ's decision, arguing that: (1) the ALJ was specifically discrediting the statements Plaintiff made to particular doctors he met with, including Drs. Bhangoo and McNairn; and (2) those statements were discredited because they were inconsistent with other statements the Plaintiff had made or actions the Plaintiff had (or had not) taken. Defendant's Opposition Brief ("Opposition Brief") 7:13-15; 8:1-

16, ECF No. 17.

Mr. Hernandez's untimely death before the hearing prevented the ALJ from hearing any of his testimony. Although his widow was able to testify to some of his limitations, the ALJ was forced, in large part, to rely on previous statements Plaintiff made to others for the credibility analysis. Specifically, the ALJ discussed statements that Plaintiff made to two consulting examiners, Sarupinder Bhangoo, M.D. and James McNairn, Psy.D.

### i. Legal Standards

To evaluate the credibility of a claimant's testimony regarding subjective complaints of pain and other symptoms, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show that the impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of the symptoms for "specific, clear and convincing reasons" that are supported by substantial evidence. *Id*.

> An ALJ can consider a variety of factors in assessing a claimant's credibility, including:
>
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted). Other factors can include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Light v. Soc. Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997). An ALJ can only rely on an inconsistency between a claimant's testimony and the objective medical evidence to reject that testimony where the ALJ specifies which "complaints are contradicted by what clinical

5

observations." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297. An ALJ properly discounts credibility if she makes specific credibility findings that are properly supported by the record and are sufficiently specific to ensure a reviewing court that she did not "arbitrarily discredit" the testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

### ii. Analysis

Here, the ALJ concluded that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 17. He questioned, however, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms." AR 21. The ALJ is thus required to provide "specific, clear and convincing reasons" for finding Plaintiff not credible.[6] *Vasquez*, 572 F.3d at 591.

With respect to the credibility of statements Plaintiff made to consulting examiner Sarupinder Bhangoo, M.D., the ALJ explains that:

> The Claimant gave a history of having diabetes for the last five years and having developed pain and numbness in both feet. He rated these pains as 5/10 to 10/10. The claimant stated that he can barely walk a block. Yet, he was able to do personal care activities and household work. The claimant was also able to go to stores, go to church and do some light household work. The claimant was observed to enter the examination room without any difficulty and moved around well. He was able to get in and out of the chair, climb up on the examination table and did not seem to be in any pain. In addition, the claimant's gait was non-antalgic and he was able to do tip toe as well as heel walking. Flexion and extension of the left thumb was significantly reduced. Sensation to pinprick and touch was reduced in both lower extremities of the mid calf area.

AR 18 (internal citations omitted).

The reasons that the ALJ cites for finding Plaintiff not credible in this instance appear to be specific, clear, and convincing. **First**, he observes that Plaintiff's statements regarding his limitations are inconsistent with the daily activities Plaintiff performed at home. **Second**, he points to instances in which Plaintiff's statements were inconsistent with the objective medical evidence—although Plaintiff alleged that he could not walk even a short distance, he appeared able to walk around without difficulty. Both of these constitute valid factors for assessing a claimant's credibility.

---

[6] This assumes that there is no evidence of malingering. Although Plaintiff was described at one point as "eager to claim mental illness," the ALJ (and the consulting examiners) stopped short of explicitly determining that Plaintiff was malingering. AR 19.

Each of the reasons the ALJ has offered appears to be supported by substantial evidence, as well. The instances the ALJ cites as inconsistent do, in fact, appear in the record. Plaintiff told Dr. Bhangoo that he was "able to do personal care and household work . . . go to stores, go to church, [and] do some light household work." AR 345. This statement was later corroborated by Plaintiff's widow at the hearing, who confirmed that Plaintiff "was able to do cleaning, sweeping, go to movies, watch television, play cards, do puzzles, go to church, do activities with children, and visit with friends." AR 34. Based on these facts, Dr. Bhangoo came to the conclusion that Plaintiff's assessment of his symptoms was not entirely accurate; he wrote that "on examination the claimant does not seem to have much [sic] problems." AR 347. Given these facts, it was reasonable for the ALJ to conclude that Plaintiff lacked credibility when discussing the severity of his symptoms.[7] *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

With respect to the credibility of statements Plaintiff made to James McNairn, Psy.D., the ALJ found that:

> The claimant also contends he suffers from depression. However, the evidence of record does not contain any mental health treatment notes. The claimant underwent a psychological consultative evaluation with James McNairn, Psy.D. in August 2010 . . . [t]he claimant was generally cooperative, but eager to claim mental illness. He appeared to be exaggerating symptoms at times. He was a poor historian with vague responses and incomplete information. Thought processes were organized and logical. Speech was of normal rate, volume and clarity. Thought content was appropriate. The claimant described his mood as "okay" and his affect was appropriate. His sleep and appetite were reported as good. The claimant's memory was mildly impaired, based on his ability to recall two of three words after five minutes.

AR 19 (internal citations omitted).

The reasons that the ALJ appears to citing for his credibility assessment here are: (1)

---

[7] Plaintiff argues that the mention of Dr. McNairn's statements about Plaintiff's credibility should not be construed to mean that the ALJ evaluated Plaintiff's credibility because Dr. McNairn's statements about Plaintiff's credibility were reviewed solely for the purpose of evaluating Dr. McNairn's credibility, rather than Mr. Hernandez's. Opening Brief 8:22-9:2. But the ALJ could easily have evaluated the credibility of Dr. McNairn and Mr. Hernandez simultaneously. Nor was Dr. McNairn's credibility ever an issue in the case; it would thus make little sense for the ALJ to review statements undermining Mr. Hernandez's credibility solely in the context of evaluating Dr. McNairn's opinion. Similarly, Plaintiff's suggestion that the ALJ "effectively disregarded" Plaintiff's statements because Plaintiff's disability report and pain questionnaire are not explicitly analyzed in the decision is not supported by the record. Opening Brief 18-21. Indeed, it appears as though express citation to the disability report would have provided even more support for the ALJ's finding that Plaintiff lacked credibility—Plaintiff asserts, for example, that his impairments have resulted in him being unable to do *any activities* at all. AR 191. Such a statement is plainly inconsistent with his other statements and the daily activities that the ALJ cited to in the record.

1  Plaintiff lacked a history of treatment for depression and there is no explanation for his failure to
2  seek treatment; and (2) Plaintiff appeared to less than candid when describing his symptoms to
3  Dr. McNairn. Both of these constitute valid reasons for finding that a Plaintiff lacks credibility.
4  *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012); *Burch v. Barnhart*, 400 F.3d 676, 681
5  (9th Cir. 2005).

6  Both of these reasons also seem supported by the evidence in the record, as well. Plaintiff
7  appears never to have sought treatment for depression; indeed, he did not even list it as an
8  impairment in his initial disability report, despite the fact that he later claimed that he had
9  suffered from it since 1980. AR 183, 445. Nor do there appear to be any references in the record
10 to treatment for depression from Plaintiff's treating physicians. Likewise, although Plaintiff was
11 eager to claim that he was "depressed," he was unable to provide specific symptoms indicating
12 that he actually was depressed. AR 445. He provided only vague and incomplete information to
13 Dr. McNairn. AR 447. The ALJ's reasons for finding Plaintiff not credible are thus clear,
14 convincing, and supported by substantial evidence.

**B. The ALJ's Assessment of Plaintiff's Educational Level was Not Supported by Substantial Evidence**

17 Plaintiff asserts that the ALJ inappropriately determined that he had limited education
18 when, in fact, he was actually illiterate.[8] This distinction matters because it would have affected
19 the ALJ's determination that there are jobs that exist in significant numbers in the national
20 economy that the claimant could perform. To support this claim of error in the ALJ's decision,
21 Plaintiff argues that: (1) the bulk of the evidence indicates that Plaintiff was unable to read or
22 write in English; (2) the fact that Plaintiff was in school up until the 7th grade does not establish
23 that he was literate; and (3) because Plaintiff was illiterate, a proper application of the "grids" by
24 the ALJ would have led to a finding that Plaintiff was disabled under Grid Rule 201.17.[9]

---

[8] "Limited education" is a category that the Social Security Administration uses when assessing an individual's level of education and is two steps above "illiterate." 20 C.F.R. §§ 404.1564(b) and 416.964(b).

[9] The grids (or Medical-Vocational Guidelines) are "an administrative tool on which the Secretary must rely when considering claimants with substantially uniform levels of impairment." *Swenson v. Sullivan*, 876 F.2d 683, 688 (9th Cir. 1989). An ALJ may not rely solely upon the grids where a Plaintiff has nonexertional limitations—in many such cases, the ALJ will opt to hear testimony from a vocational expert who can place the Plaintiff's nonexertional limitations in context. *Id.* However, where the grids demand a finding that a claimant is disabled even without the

8

Defendant does not argue that substantial evidence supported the ALJ's finding that Plaintiff had a limited education. Rather, she argues that application of the grids, no matter Plaintiff's educational level, would lead to a finding of "not disabled." She bases this argument on her assertion that Plaintiff previously performed work in a skilled/semiskilled capacity and thus should not be considered "unskilled," as required by Grid Rule 201.17. Consequently, he would fall within the auspices of Grid Rule 201.19 and be found "not disabled."

The disputed Grid Rules are excerpted as follows:

| Rule | Age | Education | Previous work experience | Decision |
|---|---|---|---|---|
| 201.17 | Younger individual age 45-49 | Illiterate or unable to communicate in English | Unskilled or none | Disabled |
| 201.19 | Younger individual age 45-49 | Limited or less | Skilled or semiskilled—skills not transferrable | Not disabled |

20 C.F.R. Pt. 404, Subpt. P, App. 2 ("Appendix Two").

### i. Legal Standards

A plaintiff has the initial burden of proving the existence of a disability within the meaning of the Social Security Act. *Terry v. Sullivan¸* 903 F.2d 1273, 1275 (9th Cir. 1990). Once this is accomplished, the "burden shifts to the Commissioner to show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience."[10] *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999), *citing* 20 C.F.R. § 404.1560(b)(3). To meet this burden, the Commissioner must either: "(1) use the grids as a framework and make a determination of what work exists that the claimant can perform, or (2) rely on a vocational expert when the claimant has significant non-exertional limitations." *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). "Non-exertional limitations" include impairments such as "poor

---

consideration of the Plaintiff's nonexertional limitations, the inquiry ends and a vocational expert's testimony cannot be used to rebut the conclusion that claimant is disabled. *Id.* ("Regulatory language supports the position that an ALJ may not find from vocational testimony that a claimant, deemed disabled under the grids, nonetheless could perform a substantial number of jobs and not be disabled"). Thus, an ALJ need only solicit the testimony of a vocational expert if the grids compel a "not disabled" finding.

[10] This analysis constitutes step five of the ALJ's five step process.

vision or inability to tolerate dust or gases," but can also include mental impairments.[11] *Tackett*, 180 F.3d at 1101; *Simons v. Sullivan*, 915 F.2d 1223, 1225 (8th Cir. 1990).

If a consideration of only the factors included in the grids would lead to a finding that a plaintiff is disabled, however, the plaintiff is entitled to a finding of "disabled," even if she also has non-exertional limitations. *Howard v. Massanari*, 255 F.3d 577, 584 (8th Cir. 2001) ("even if an individual has a combination of both exertional and nonexertional limitations, a finding of disabled may be reached using the 'grids' if the individual's exertional limitations alone dictate such a finding"); *Swenson*, 876 F.2d at 688. Thus, a finding of "disabled" under the grids terminates the inquiry, regardless whether a plaintiff has other non-exertional limitations that are not accounted for by the grids.

Among the factors considered by the grids is the claimant's education level. The Social Security Administration has six different categories used to assess a claimant's education level: (1) illiteracy; (2) marginal education; (3) limited education; (4) high school education and above; (5) inability to communicate in English; and (6) other. 20 C.F.R. §§ 404.1564(b) and 416.964(b). Under the regulations, literacy merely requires the ability to "read and write only the simplest messages." *Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987) ("For the severely functional purpose of identifying a class of workers with negligible employment opportunities, the standard for literacy has been pitched quite low, and appropriately so; for the question is only whether the applicant is so deficient in ability to read and write that he cannot obtain even an unskilled job"). Despite this low threshold, however, a finding by an ALJ that a plaintiff is literate still requires the support of substantial evidence. *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir. 1987) (no substantial evidence of literacy where plaintiff completed six years of formal education but testified that she could not write). Moreover, a plaintiff's formal educational grade level may only be used to determine educational abilities where "there is no

---

[11] This rule exists because the grids were originally designed to provide a streamlined way for the Commissioner to reach decisions based solely on a Plaintiff's physical RFC and other vocational factors (*e.g.*, age, experience, and past work experience). *Vazquez-Rivera v. Comm'r of Soc. Sec.*, 943 F.Supp.2d 300, 311 (D.P.R. 2013). Thus, each of the "Rules" in the grids assumes that any given plaintiff with the associated factors would be able to perform all the potential jobs within the limits prescribed by those factors. If, however, a plaintiff has a non-exertional limitation that is not accounted for within the grids, a vocational expert may be necessary to incorporate those limitations into the analysis.

other evidence to contradict it." 20 C.F.R. §§ 404.1564(b) and 416.964(b); *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 451 (6th Cir. 1990) (plaintiff's 8th grade level contradicted by evidence that he read at or below a 3rd grade level and was thus "functionally illiterate").

### ii. Analysis

The ALJ determined simply that "[t]he claimant has a limited education and is able to communicate in English." AR 20. After determining that Plaintiff was "not disabled" under the grids, the ALJ proceeded to write that the "vocational expert testified that considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." AR 20. There does not appear to be any analysis in the decision regarding Plaintiff's educational background, nor does the ALJ appear to have asked Maria Hernandez about Plaintiff's ability to read or write. Despite the determination that the vocational expert considered Plaintiff's age, education, and work experience, the hearing transcript does not included any references to education in the hypotheticals presented to the vocational expert, nor does the vocational expert reference Plaintiff's education in her answers. AR 38-40. It appears that the ALJ may have concluded that Plaintiff had a "limited education" because Plaintiff's disability report indicates that he completed the 7th grade (although that is not expressed in the decision). AR 188. There does not appear to be any other evidence in the record to support the "limited education" finding. And, as noted above, Defendant does not appear to contest the argument that the ALJ lacked substantial evidence for this finding.

There are, however, facts in the record that contradict the established grade level. For instance, the same disability report includes a note that Plaintiff cannot read or write in English. AR 182. The record includes a short note from the Department of Disability Services explaining that Plaintiff said he had difficulty reading words more complex than "cat" or "dog." Plaintiff also claimed that he had previously been tested and found to have a 1st grade reading level. AR 205. Finally, Dr. McNairn, to whom the ALJ gave "the most probative weight," noticed that Plaintiff was unable to complete a brief pre-interview psychosocial history at his office without

11

the reading and writing assistance of his wife. AR 444. Thus, Plaintiff's grade level may not have accurately captured his educational level. There is inadequate evidence to conclude that Plaintiff fell into the "limited education," rather than the "illiterate" category.[12]

Defendant argues that the ALJ's decision properly accounted for Plaintiff's limitations because: (1) Plaintiff had previous skilled work experience and should thus fall within Grid Rule 201.19, rather than 201.17; and (2) the ALJ "accounted for all of the educational limitations" in questioning the vocational expert. Opposition Brief 10:10-11. Defendant's argument appears to be that the use of the vocational expert cures any defect the ALJ may have demonstrated in applying the grids. Both the 8th and 9th Circuit Courts of Appeal, however, have held that a "disabled" finding under the grids establishes that the claimant is disabled, even in the presence of a vocational expert. *Howard*, 255 F.3d at 584; *Swenson*, 876 F.2d at 688. Such a holding makes sense: Grid Rules are used to determine whether a claimant can perform a range of jobs assuming certain limitations. Vocational expert testimony is used when a claimant has other limitations that might further restrict the range of jobs they can perform. If a Grid Rule determines that a claimant is "disabled," the range of jobs a claimant can perform is essentially equal to zero. Thus it would make little sense to require a vocational expert to testify about further limitations the claimant may possess—the number of jobs they will be able to perform is still zero and they will still qualify as "disabled." [13]

Similarly, Plaintiff's previous skilled work experience would not qualify him for Grid Rule 201.19 and a "not disabled" finding. As Plaintiff points out, the case law on this subject provides little room for interpretation. Although Grid Rule 201.19 creates a separate category for claimants who have skilled work experience that is not transferable, the Ninth Circuit Court of Appeals has expressly held that "[a]ll grid rules are to be interpreted as treating a skilled or semi-skilled work history with no transferable skills as equivalent to an unskilled work history."

---

[12] This is not to say that there is substantial evidence that the Plaintiff is, in fact, illiterate. It is merely that the current record does not provide substantial evidence that the Plaintiff has a "limited education" as defined by the regulations and case law.
[13] Nor is Defendant correct that the ALJ accounted for Plaintiff's educational limitations in his questioning of the vocational expert. In this instance, the ALJ appears to have omitted any reference to Plaintiff's education in framing his hypothetical questions to the vocational expert. AR 38-40.

*Silveira v. Apfel*, 204 F.3d 1257, 1261 (9th Cir. 2000) ("Thus, Rule 201.17 applies to a claimant who is restricted to sedentary work, who is 45-49 years old, who is illiterate or unable to communicate in English, and who has a skilled or semi-skilled work history with no transferable skills or an unskilled work history"). Defendant attempts to distinguish *Silveira*, but the facts of *Silveira* are substantially similar to the facts of the current case. In *Silveira*, the Commissioner determined that the claimant was not disabled under Grid Rule 201.19. On appeal, however, Silveira argued that the Commissioner should have applied Grid Rule 201.17 because he was "illiterate in English and his semi-skilled work history with no transferable skills is equivalent to an unskilled work history." *Id.* at 1259. The Court agreed with Silveira and found that any regulations that deviated from its holding must have been "adopted inadvertently." *Id.* at 1261. *Silveira* is controlling—if Plaintiff is found to be illiterate, Grid Rule 201.17 should be applied, despite his previous work history.

      Plaintiff urges the Court to reverse the ALJ's decision and immediately award benefits to Plaintiff. Such an outcome would make sense "where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." *Swenson v. Sullivan*, 876 F.2d at 689. That is not the case here. As discussed above, there is a marked absence of evidence within the record concerning Plaintiff's educational background and ability to read and write. Even the evidence that is currently in the record may be doubtful—at least two of the three references to literacy appear to have been made by Plaintiff himself, whose credibility was questioned by the ALJ. While Plaintiff's untimely death may have made additional fact finding more difficult, the Court does not believe it impossible.

///
///
///
///
///
///
///

## VI. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence as described above. Accordingly, this Court GRANTS Plaintiff's appeal from the administrative decision of the Commissioner of Social Security and the case is remanded to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Maria Hernandez, as heir and representative of the estate of Roberto Hernandez, and against Defendant Carolyn W. Colvin, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: __March 18, 2015__           _____/s/ Gary S. Austin_____
                                    UNITED STATES MAGISTRATE JUDGE